IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN DOE,               )
                     )
     Plaintiff,     )
                     )    NO. 3:24-cv-00019
v.                    )
                     )    JUDGE RICHARDSON
INTERNAL REVENUE SERVICE, et al.,  )
                     )
     Defendants.   )
                     )

## **MEMORANDUM OPINION**

Plaintiff John Doe initiated this lawsuit by filing a complaint (Doc. No. 1, "Complaint") in this Court. Defendant[1] Internal Revenue Service ("IRS") filed a motion to dismiss (Doc. No. 34, "Motion") with an accompanying memorandum (Doc. No. 34-1, "Opening Brief"). Plaintiff has filed a response to the Motion (Doc. No. 40, "Response"), and Defendant has filed its reply in further support of the Motion (Doc. No. 44, "Reply"). The Court held oral argument on the Motion on September 11, 2025.

Via the Motion, Defendant seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 34 at 1). For the reasons stated herein, the Motion will be **GRANTED**, and this action will be dismissed.

---

[1] The United States and the Department of the Treasury are also named defendants in this action. For the sake of clarity, the Court uses the term "Defendant" herein to refer exclusively to the IRS because it is the sole movant with respect to the instant Motion.

This case arises out of a dispute between Plaintiff and Defendant concerning Plaintiff's whistleblower award under 26 U.S.C. § 7623(a).[3] This case revolves, in brief, around the challenges brought by Plaintiff against certain IRS guidance with respect to the determination of IRS whistleblower awards under 26 U.S.C. § 7623(a). Plaintiff brings both adjudicatory challenges related to the IRS's adjudication of his own Whistleblower Award as well as rulemaking challenges to the guidance underlying the determination of awards like that of the Plaintiff's. (Doc. No. 1 at ¶¶ 43-146).

1. Statutory Background

Before addressing the factual and legal background underpinning this case, the Court discusses the legal regimen governing IRS whistleblower awards as necessary.

The whistleblower award regime is governed by 26 U.S.C. § 7623. In the Taxpayer Bill of Rights, § 1209, 110 Stat. 1452 (1996), Congress amended the whistleblower award statute to read as follows:

> The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for—
> (1) detecting underpayments of tax, and
> (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,
>
> in cases where such expenses are not otherwise provided for by law. Any amount

---

[2] The facts herein are taken from the Complaint. For purposes of the instant Motion, the facts in the Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

[3] When referring to Plaintiff's whistleblower award specifically, that is, Plaintiff's whistleblower award under 26 U.S.C. § 7623(a) the (allegedly inadequate) amount of which serves as the basis of this litigation and which is described in further detail below, the Court endeavors to refer to it as the "Whistleblower Award."

payable under the preceding sentence shall be paid from the proceeds of amounts (other than interest) collected by reason of the information provided, and any amount so collected shall be available for such payments.

26 U.S.C. § 7623 (1996). (Doc. No. 1 at ¶ 9).

On December 20, 2006, Congress again amended the whistleblower statute to, in the relevant part, include a new section: § 7623(b). 26 U.S.C. § 7623(b). (Doc. No. 1 at ¶ 21). Section 7623(b) carved out a second category of whistleblower awards for those whistleblower claims filed on or after December 20, 2006, with collected proceeds exceeding $2,000,000, and, in the event the action was against an individual taxpayer, where that individual taxpayer's gross income exceeded $200,000. *See* 26 U.S.C. § 7623(b)(5). (Doc. No. 1 at ¶ 21). For ease of reference and consistent with the parties' briefing, awards under § 7623(b) herein will be referred to as § 7623(b) awards.

The statutory language codified in 1996 remained in the Code as 26 U.S.C. § 7623(a). Section 7623(a) thus continues to govern whistleblower awards made in response to claims filed before December 20, 2006 (that is, those awards previously made under 26 U.S.C. § 7623 (1996)), as well as those whistleblower awards filed for by award claimants on or after December 20, 2006 that do not otherwise meet the statutory requirements in 26 U.S.C. § 7623(b). (Doc. No. 1 at ¶ 21). For ease of reference, the types of awards under both 26 U.S.C. § 7623 (1996) and 26 U.S.C. § 7623(a), whether filed before, on, or after December 20, 2006, will be referred to, generally following the style in the parties' briefing, as § 7623(a) awards. For present purposes, it is sufficient to note that Plaintiff's Whistleblower Award is a § 7623(a) award.[4]

---

[4] Although the Complaint includes a request to this Court that Plaintiff's Whistleblower Award be categorized as a § 7623(b) claim, at the Court's September 11, 2025 hearing on the Motion, Plaintiff's counsel confirmed that Plaintiff was no longer contending that Plaintiff's Whistleblower Award was a 7623(b) award. (Doc. No. 57 at 26:10-14).

Congress has provided no rules or standards for § 7623(a) awards, other than to say that the Secretary of the Treasury may make under § 7623(a) whatever awards "he deems necessary." 26 U.S.C. § 7623(a). By contrast, Congress provided some standards for § 7623(b) awards, including that an award be "at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action." 26 U.S.C. § 7623(b)(1).

As relevant here, after the 1996 amendments to the whistleblower award statute, the IRS promulgated (without notice and comment) the so-called "IRM $10 Million Fixed Maximum Dollar Cap," as laid out first in IRS Policy Statement 4-27 (2004),[5] which was issued on August 13, 2004.[6] (Doc. No. 1 at 2, ¶¶ 14-20) (discussing IRS Policy Statement 4-27 (2004)). The IRM $10 Million Fixed Maximum Dollar Cap was continually reissued, without notice and comment, after the 2006 amendments to the whistleblower award statute. *See e.g.,* IRS Policy Statement 4-27 (2004); IRM § 25.2.2.9.1 (2008); IRM § 25.2.2.9.1 (2010); IRM §§ 25.2.2.5.3, 25.2.2.5.4 (2018); IRM Exhibit 25.2.2-1 (2018); IRM §§ 25.2.2.6.3, 25.2.2.6.4 (2019); IRM § 25.2.2 (2023) (collectively, the "IRM $10 Million Fixed Maximum Dollar Cap" or the "Cap"). (Doc. No. 1 at ¶¶ 22, 23, 30-35). Until 2010, the IRM $10 Million Fixed Maximum Dollar Cap applied to all § 7623(a) awards and fixed the maximum monetary amount available under these awards at $10,000,000. *Compare* IRM § 25.2.2.9.1 (2010) *with* IRM § 25.2.2.9.1 (2008). (Doc. No. 1 at ¶¶ 22-23).

IRS Policy Statement 4-27 also prescribed a tiered award system that separated whistleblower awards into three tiers. (Doc. No. 1 at ¶ 18) (citing IRS Policy Statement 4-27

---

[5] A copy of IRS Policy Statement 4-27 (2004) was filed as Exhibit B to the Complaint (Doc. No. 1-3).

[6] IRM stands for "Internal Revenue Manual," a handbook of internal IRS guidance.

(2004)). Specifically, the tiered award system provided that a whistleblower was entitled to either 15 percent, 10 percent, or 1 percent of total collected proceeds based on how helpful the information the whistleblower provided was to the recovery of the proceeds. (*Id.*).

In 2008, the IRM was updated again, this time "to provide that tax whistleblower awards covered under [] § 7623(a), whether filed before or after December 20, 2006, would continue to be limited to the above described three award percentage tiers of 15 percent, 10 percent, and one percent." (Doc. No. 1 at ¶ 22). With these changes, "[t]he IRM also continued to impose the IRM $10 Million Fixed Maximum Dollar Cap on all [] § 7623(a) awards." (Doc. No. 1 at ¶ 22) (citing IRM § 25.2.2.9.1 (2008)).[7]

In 2010, the IRS amended the IRM without notice and comment to provide that the IRM $10 Million Fixed Maximum Dollar Gap would apply to claims for § 7623(a) awards (hereinafter "§ 7623(a)-award claim(s)") only if they were filed before July 1, 2010. (*See generally* Doc. No. 1 at ¶ 23) (citing IRM § 25.2.2.9.1 (2010)) (discussing the 2010 amendment to the IRM generally).[8] This amendment to the IRM also increased "award percentages from the maximum of 15 percent to a range of 15 to 30 percent" for those 7623(a)-award claims filed on or after July 1, 2010. IRM § 25.2.2.9.1 (2010). (*Id.*). In effect, then, "the IRS decided that [] § 7623(a)[-award] claims filed [on or] *after* July 1, 2010, would no longer be subject to the IRM $10 Million Fixed Maximum Dollar Cap and would be eligible for an award calculation of between 15 and 30 percent, whereas [] § 7623(a)[-award] claims filed *before* July 1, 2010, were still subject to the IRM $10 Million

---

[7] A copy of IRM § 25.2.2.9.1 (2008) was filed as Exhibit C to the Complaint (Doc. No. 1-4).

[8] A copy of IRM § 25.2.2.9.1 (2010) was filed as Exhibit D to the Complaint (Doc. No. 1-5).
The Court notes, for purposes of providing context, that IRM § 25.2.2.9.1 (2010) further provided that "[f]or award claims filed prior to December 20, 2006 (Exhibit 25.2.2-13) the award will be based on the policy in effect at the time the claim was filed, with one exception relating to payment of refund protection claims and criminal fines." This, in effect, reimposed a $100,000 cap for award submissions prior to August 26, 1997, and a $2,000,000 cap for awards submitted between August 26, 1997, and August 13, 2004.

Fixed Maximum Dollar Cap and a lower award percentage" tier of either 15 percent, 10 percent, or 1 percent. (*Id.*).

At issue here, however, is the IRS amendment to the IRM issued on January 12, 2018 (the "2018 IRM Award Policy Change" or the "Policy Change"). (Doc. No. 1 at ¶¶ 30-34).[9] The 2018 IRM Award Policy Change provided for "three separate . . . classes of whistleblower award claimants." (Doc. No. 1 at ¶ 33). Therefore, the Court describes the 2018 IRM Award Policy Change, and its provisions with respect to three different kinds of award claims, in the following paragraph.

First, for § 7623(a)-award claims filed prior to December 20, 2006 (including Plaintiff's Whistleblower Award), the 2018 IRM Award Policy Change maintained both the $10 Million Fixed Maximum Dollar Cap and the three-tiered (1 percent, 10 percent, and 15 percent) percentage limitation on awards made on such § 7623(a) claims. (*Id.* at ¶ 33(a)). Second, with respect to § 7623(a)-award claims filed on or after December 20, 2006, the 2018 IRM Award Policy Change provided both that the $10 Million Fixed Maximum Dollar Cap did not apply and that claimants "may receive an award of between 15 and 30 percent of collected proceeds." (*Id.* at ¶ 33(b)). The third class of award claimants concerned those making claims for § 7623(b) awards (hereinafter "§ 7623(b)-award claim(s)"). (*Id.* at ¶ 33(c). With respect to these § 7623(b)-award claims, the Policy Change provided that those making such award claims are entitled to an award of "15 to 30 percent of collect proceeds," are "entitled to award calculation factors in Treas. Reg. § 301.7623-4, and are not subject to the IRM $10 Million Fixed Maximum Dollar Cap." (*Id.*).

---

[9] For the actual provisions of the IRM implementing the Policy Change, *see* IRM §§ 25.2.2.5.3, 25.2.2.5.4 (2018) and IRM Exhibit 25.2.2-1 (2018).

The 2018 IRM Award Policy Change was enacted without notice and comment. (*Id.* at ¶ 32). The 2018 IRM Award Policy Change was republished in 2019 under IRM §§ 25.2.2.6.3, 25.2.2.6.4. (*Id.* at ¶ 30).

On March 13, 2023, the IRS reissued both the IRM $10 Million Fixed Maximum Dollar Cap and the 2018 IRM Award Policy Change in IRM § 25.2.2 (2023). (*Id.* at ¶ 34). The March 13, 2023 version of IRM § 25.2.2 "was in place and presumed to be relied on by the IRS in the present matter as it was cited in Plaintiff's" Final Award Determination.[10] (*Id.* at ¶ 35).

Meanwhile, on August 12, 2014, new regulations were issued (with notice and comment) to govern whistleblower awards under 26 U.S.C. § 7623—those being Treas. Reg. §§ 301.7623-1 through -4. (Doc. No. 1 at ¶ 24). As pertinent to the present dispute, Treas. Reg. §§ 301.7623-1 through -3 contain identical "Effective/applicability date" sections providing that:

> This rule is effective on August 12, 2014. This rule applies to information submitted on or after August 12, 2014, and to claims for award under *sections 7623(a) and 7623(b)* that are open as of August 12, 2014.

Treas. Reg. §§ 301.7623-1(f), 301.7623-2(f), 301.7623-3(f) (emphasis added).

On the other hand, Treas. Reg. § 301.7623-4's "Effective/applicability date" subsection provides that:

> This rule is effective on August 12, 2014. This rule applies to information submitted on or after August 12, 2014, and to claims for award under *section 7623(b)* that are open as of August 12, 2014.

Treas. Reg. § 301.7623-4(e) (emphasis added).

As for the substance of the regulations, Treas. Reg. § 301.7623-1 provides that "the Whistleblower Office may pay an award under section 7623(a) in a suitable amount." Treas. Reg. § 301.7623-1(a). And Treas. Reg. § 301.7623-2 provides definitions for the regulatory scheme.

---

[10] A copy of pertinent parts of IRM § 25.2.2 (2023) was filed as Exhibit E to the Complaint (Doc. No. 1-6).

As for Treas. Reg. § 301.7623-3, its subsection (a) provides that the Whistleblower Office "will pay awards under section 7623(a) and pay and determine awards under section 7623(b) pursuant to the rules of this section." Treas. Reg. § 301.7623-3(a). And its subsection (b) provides further requirements for the payment of awards under § 7623(a), including that:

> . . . the Whistleblower Office will communicate a preliminary award recommendation under section 7623(a) and *§§ 301.7623-1 through 301.7623-4* to the whistleblower by sending a preliminary award recommendation letter that states the Whistleblower Office's preliminary computation of the amount of the collected proceeds, recommended award percentage, recommended award amount (even in cases when the application of *§ 301.7623-4* results in a reduction of the recommended award amount to zero), and a list of the factors that contributed to the recommended award percentage.

Treas. Reg. § 301.7623-3(b)(1) (emphasis added).

The cross-reference to Treas. Reg. § 301.7623-4 in the above quote, as well as another cross-reference to Treas. Reg. § 301.7623-4 in Treas. Reg. § 301.7623-3(b)(2), is key to the instant dispute as Treas. Reg. § 301.7623-4(b) "includes . . . [a] set of positive and negative factors to be considered in evaluating certain award claims and determining the appropriate award percentage." (Doc. No. 1 at ¶ 27).

Notably, no fixed dollar cap is provided for specifically in Treas. Reg. §§ 301.7623-1 through -4. (*Id.* at ¶ 29).

2. <u>Factual Background</u>

The Court next provides a brief overview of Plaintiff's claim(s) and Whistleblower Award in particular. "Beginning in the 1990s, Plaintiff began providing the IRS with information related to a Fortune 100 company ("Taxpayer"). In short, Plaintiff's submission unveiled Taxpayer's years-long scheme comprised of the improper creation and use of an offshore company." (*Id.* at ¶ 38). Plaintiff "provided information about how Taxpayer manipulated both financial reporting and tax liabilities to their own and third party/counter party benefit." (*Id.* at ¶ 40).

Plaintiff first provided information to the IRS on August 24, 1995, when he sent "an 11-page memorandum and approximately 304 pages of attachments that were separated into 22 various categories of documents" with his Form 211 submission.[11] (*Id.* at ¶ 42(a)). On April 13, 1998, the IRS "rejected Plaintiff's Form 211." (*Id.* at ¶ 42(d)). On April 5, 2005, "Plaintiff again submitted a Form 211, that also included another approximately 300 pages of evidence and narrative describing Taxpayer's tax noncompliance," and the next day, "Plaintiff's counsel . . . sent an email to various IRS Criminal Investigations . . . representatives . . . that included the April 5, 2005 Form 211 submission and related substantiating evidence." (*Id.* at ¶¶ 42(d), 42(e)). On May 27, 2005, "Plaintiff met with IRS Special Agents . . . [and] detail[ed] the precise nature of the tax noncompliance at issue using his detailed knowledge and experience to inform the government of the specific tax issues at hand." (*Id.* at ¶ 42(h)). On January 23, 2006 "Plaintiff's counsel . . . sent the IRS a new Form 211 on behalf of Plaintiff," and on February 7, 2006, "the IRS sent Plaintiff a letter requesting additional information." (*Id.* at ¶¶ 42(i), 42(k)). On February 20, 2006, Plaintiff responded to the IRS's request, and "sent correspondence . . . describing Taxpayer's tax evasion scheme as well as a more thorough list of documents [already] provided." (*Id.* at ¶ 42(l)).

Much later, on February 8, 2023, after additional correspondence from Plaintiff's counsel, "the IRS issued Plaintiff an initial Preliminary Award Recommendation Letter (or, "PARL")." (*Id.* at ¶ 42(o)).[12] The PARL "recommended an award of 15 percent less 5.7 percent of the award due to the Budget Control Act of 2011, [and] stated that the total amount of proceeds collected by the IRS was $398,322,008." (Doc. No. 1 at ¶ 42(o)) (citing Doc. No. 1-7 at 4). The PARL also provided that in "accordance with Treasury Regulation Section 301.7623-4, [the Whistleblower Office] did

---

[11] A Form 211 "is the standard form for a whistleblower to submit information and request an award." (Doc. No. 1 at 6 n.2).

[12] A copy of the PARL was filed as Exhibit F to the Complaint (Doc. No. 1-7).

not conduct a positive and negative factor analysis because we did not find any authority to support an increase above the maximum $10 million allowed." (Doc. No. 1 at ¶ 42(o)) (quoting Doc. No. 1-7 at 4). On July 5, 2023, the IRS sent Plaintiff a "Revised PARL Package,"[13] which "again recommended a $10,000,000 award for Plaintiff. However, the 'Summary Report' now stated that the 'Preliminary tax, penalties, interest, and other amounts collected based on information provided by Whistleblower' totaled $1,616,837,238.00. The Summary Report also stated that '[i]n accordance with Treasury Regulation Section 301.7623-4, [the Whistleblower Office] did not conduct a positive and negative factor analysis because we did not find any authority to support an increase award above the maximum $10 million allowed.'" (*Id.* at ¶ 42(p)) (quoting Doc. No. 1-8 at 7). On August 2, 2023, Plaintiff's counsel "submitted a 19-page memorandum to IRS Whistleblower Office Director John Hinman . . . arguing that the IRM $10 Million Fix Maximum Dollar Cap imposed on Plaintiff's [Whistleblower Award] was invalid in several ways." (*Id.* at ¶ 42(q)).[14]

On September 7, 2023, the IRS sent Plaintiff a "Final Award Decision Under Internal Revenue Code (IRC) Section 7623(a). [("Final Award Determination")]." (*Id.* at ¶ 42(r)) (citing Doc. No. 1-10).[15] The Final Award Determination informed Plaintiff that the "Whistleblower Office had reviewed the comments you provided on the preliminary award recommendation. The Whistleblower Office has made a final decision that you are entitled to an award of $10,000,000." (Doc. No. 1 at ¶ 42(r)) (quoting Doc. No. 1-10 at 1). In the relevant part, the Final Award Determination also included a Determination Report, which provided:

---

[13] A copy of the revised PARL package was filed as Exhibit G to the Complaint (Doc. No. 1-8).

[14] A copy of this memorandum was filed as Exhibit H to the Complaint (Doc. No. 1-9).

[15] A copy of the Final Award Determination was filed as Exhibit I to the Complaint (Doc. No. 1-10).

In accordance with Treasury Regulation Section 301.7623-4, [the Whistleblower Office] did not conduct a positive and negative factor analysis because we did not find any authority to support an increase award above the maximum $10 million allowed.

The claim was filed before December 20, 2006, and is subject to the Pre-Enactment rules in effect at that time. The pre-amendment awards program, IRC § 7623, applies to information provided to the Internal Revenue Service (IRS) prior to December 20, 2006 (the effective date of The Tax Relief and Health Care Act of 2006 ("TRHCA"), and limits awards to 15%, up to a $10 million cap.

(Doc. No. 1-10 at 2).

On September 20, 2023, Plaintiff's counsel submitted another letter to the IRS "again outlining how the Defendants failed to properly follow the APA in deciding to impose the IRM $10 Million Fixed Maximum Dollar Cap and requesting a meeting to discuss the issues at play." (Doc. No. 1 at ¶ 42(s)). Finally, on September 27, 2023, the IRS sent a second Final Award Determination, which "largely mirrored" the one sent on September 7, 2023 by again "imposing the IRM $10 Million Fixed Maximum Dollar Cap and stating that the 'claim was filed before December 20, 2006, and is subject to the Pre-Enactment rules in effect at that time.'" (Doc. No. 1 at ¶ 42(t)) (quoting Doc. No. 1-11 at 4).[16]

3. Plaintiff's Claims

Plaintiff brings challenges to both the IRM $10 Million Fixed Maximum Dollar Cap and the 2018 IRM Award Policy Change. (Doc. No. 1 at ¶¶ 43-146). The Complaint comprises two counts (Counts IV and VIII) challenging the adjudication of Plaintiff's § 7623(a) Whistleblower Award, three counts (Counts I, II, III) challenging the rulemaking underlying—as well as the substance of—the IRM $10 Million Fixed Maximum Dollar Cap , and three counts (Counts V, VI,

---

[16] A copy of the second Final Award Determination was filed as Exhibit J to the Complaint (Doc. No. 1-11).

and VII) challenging the rulemaking underlying—as well as the substance of—the 2018 IRM Award Policy Change. (*Id.*).[17]

Turning first to the adjudicatory challenges, Plaintiff challenges the application of the IRM $10 Million Fixed Maximum Dollar Cap (Count IV) and the 2018 IRM Award Policy Change (Count VIII) as applied to Plaintiff in "the determination of Plaintiff's [Whistleblower Award]." (*Id.* at ¶¶ 92, 145). More particularly, the Complaint alleges that "both Treas. Reg. § 301.7623-1 through -4 and IRM Exhibit 25.2.2-1, in place at the time of Plaintiff's Final Award Determination, as well as the applicable regulation at the time Plaintiff filed [his claim], contained several positive and negative factors for agency officials to consider in calculating individual whistleblower awards" and that the application of the IRM $10 Million Fixed Maximum Dollar Cap and the 2018 IRM Award Policy Change "cut short" the proper individualized determination of the award under these factors. (*Id.* at ¶¶ 88, 141). Plaintiff further alleges that the IRS "offered no explanation or reasoned analysis" in applying the Cap or the Policy Change to the determination of his Whistleblower Award. (*Id.* at ¶¶ 89, 142). In effect, then, Plaintiff argues that the Cap "effectively removes and replaces the analysis anticipated by Treas. Reg. 301.7623-1(a), 301.7623-3(b), and 301.7623-4(b)." (*Id.* at ¶ 90).

With respect to the rulemaking challenges to the IRM $10 Million Fixed Maximum Dollar Cap, Plaintiff alleges that the Cap is invalid because it (1) is inconsistent with applicable Department of the Treasury regulations in Treas. Reg. §§ 301.7623-1 through -4 (Count I);[18] (2);

_____

[17] Although the Court acknowledges that Counts I, II, III, V, VI, and VII also challenge the substance of the Cap and the Policy Change—and not just the rulemaking process by which they were promulgated—for the sake of brevity, the Court generally refers to these counts as making rulemaking challenges.

[18] With respect to whether Count I is properly categorized as a rulemaking challenge to the Cap's validity, the Court notes that Count I appears to conflate the notion that the Cap is "[i]nconsistent with [a]pplicable [r]egulations," (Doc. No. 1 at 21), with the idea that the determination of Plaintiff's Whistleblower Award was flawed based on the application of the Cap. (*Id.* at ¶ 50). To the extent there is doubt here, the Court

was promulgated by the IRS without adequate notice and opportunity for comment (Count II); and (3) is arbitrary and capricious due to the IRS's failure to provide any explanation or reasoned analysis for the policy (Count III). (*Id.* at ¶¶ 43-78). In effect, Counts I, II, and III challenge the *adoption* of the IRM $10 Million Fixed Maximum Dollar Cap.

With respect to the rulemaking challenges to the 2018 IRM Award Policy Change, Plaintiff alleges that the Policy Change is invalid because it (1) is inconsistent with applicable Department of the Treasury regulations in Treas. Reg. §§ 301.7623-1 through -4 (Count V); (2) was promulgated by the IRS without adequate notice and opportunity for comment (Count VI); and (3) is arbitrary and capricious due to the IRS's failure to provide any explanation or reasoned analysis for the policy (Count VII). (*Id.* at ¶¶ 94-131). In effect, Counts V, VI, and VII challenge the *retention* in 2018 of the IRM $10 Million Fixed Maximum Dollar Cap as to awards like Plaintiff's, as opposed to the Cap's implementation in the first place.

4. <u>Relief Requested</u>

Plaintiff requests various kinds of relief. Plaintiff does request a specific kind of relief on Count I, (*id.* at ¶ 51) ("The IRM $10 Million Fixed Maximum Dollar Cap . . . should be set aside under 5 U.S.C. § 706(2)(A)"), and Count V, (*id.* at ¶ 102) ("The 2018 IRM Award Policy Change . . . should be set aside under 5 U.S.C. § 706(2)(C)"). So, at least this kind of relief (the setting

---

understands Count I to be a rulemaking challenge to the validity of the Cap. The Court's understanding of Count I is buttressed by the parties' briefing on the Motion. In their Opening Brief, Defendant categorizes Count I, along with Counts II, III, V, VI, and VII, as a rulemaking challenge (i.e., a challenge to the validity of the Cap). (Doc. No. 34-1 at 21-22). In his Response, Plaintiff does not contest Defendant's characterization, and instead, like the Court does here, categorizes only Counts IV and VIII as challenges to the IRS's adjudication of Plaintiff's Whistleblower Award. (Doc. No. 40 at 3, 8). Moreover, the relief specifically requested under Count I—that the Cap "be set aside under 5 U.S.C. § 706(2)(A)"—clearly suggests that Count I is properly understand as a rulemaking challenge to the validity of the Cap. (Doc. No. 1 at ¶ 51).

To the extent that Plaintiff intended for Count I to be a challenge to the adjudication of his Whistleblower Award, Count I—like Counts IV and VIII—would also be dismissed under Rule 12(b)(6) as presenting a challenge to an unreviewable agency action under 5 U.S.C. § 701(a)(2).

aside of particular respective IRM provisions) is associated with particular counts. However, not all of Plaintiff's requested relief is requested in connection with particular counts. Where the "relief demanded" is "lump[ed] together . . . at the end of the complaint . . . courts can interpret such complaints to determine which remedies apply to [which counts]." *Nickell v. Bank of America, N.A.*, No. 11-2006-STA-DKV, 2012 WL 394467, at *5 (W.D. Tenn. Feb. 6, 2012) (interpreting a complaint to determine which remedies were requested of particular defendants). *See also In re Dougal*, 395 B.R. 880, 886 (Bankr. W.D. Pa. 2008) (construing a complaint with "only a single prayer for relief section at the end of the entire pleadings" to find a prayer for relief under a particular count). The Court has done so here and (for fairly obvious reasons) construes the forms of requested relief (a) targeted at the adjudication of Plaintiff's Whistleblower Award as being requested under the adjudicatory challenges in Count IV and Count VIII; and (b) targeted at the validity of the 2018 IRM Award Policy Change and the IRM $10 Million Fixed Maximum Dollar Cap writ large as being requested under the rulemaking challenges to the Cap and the Policy Change in Count I, Count II, Count III, Count V, Count VI, and Count VII.

Based on this approach, with respect to his adjudicatory, as-applied challenges in Count IV and Count VIII,[19] Plaintiff seeks to have this Court "[p]ermanently enjoin the application of the IRM $10 Million Fixed Maximum Dollar Cap specifically outlined in IRM Exhibit 25.2.2-1, Policy Statement 4-27 and the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3, with respect to Plaintiff's Final Award Determination." (Doc. No. 1 at 43). Plaintiff also requests that this Court "[i]ssue an order finding that Plaintiff is entitled to the 15 percent award approved by the IRS as set forth in its Final Award Determination without application of the IRM $10

---

[19] As explained in a footnote above, the Court understands Count I to make not an adjudicatory challenge to the determination of Plaintiff's Whistleblower Award, but instead only a rulemaking challenge to the validity of the Cap.

Million Fixed Maximum Dollar Cap," or "[i]issue an order remanding Plaintiff's claim (Claim Number 2013-008202) back to the IRS Whistleblower Office to issue a revised award determination in accordance with Treasury Regulations at 301.7623-1 to -4 or their predecessors to account for a 'suitable amount' utilizing the applicable factors for an award determination with no fixed maximum dollar cap." (*Id.* at 44).[20]

With respect to the rulemaking challenges, Plaintiff requests that this Court (1) "[r]emand the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3 and IRM Exhibit 25.2.2-1 to the IRS for reconsideration in compliance with the APA with consideration of treating all filers similarly with respect to the application of IRM $10 Million Fixed Maximum Dollar Cap"; (2) "[e]nter a judgement declaring that both the promulgation and application of the IRM $10 Million Fixed Maximum Dollar Cap specifically outlined in IRM Exhibit 25.2.2-1, Policy Statement 4-27 and the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3, are arbitrary, capricious, otherwise not in accordance with law, or otherwise in excess of statutory jurisdiction, authority, or limitation, or short of statutory right, within the meaning of the Administrative Procedure Act"; or (3) "[i]ssue an order vacating and setting aside IRM $10 Million Fixed Maximum Dollar Cap specifically outlined in IRM Exhibit 25.2.2-1, Policy Statement 4-27 and the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3, pursuant to the Administrative Procedure Act." (*Id.* at 43-44).

---

[20] Plaintiff also requests that this Court "[i]ssue an order remanding Plaintiff's whistleblower claim . . . back to the IRS Whistleblower Office to issue a revised award determination as a[] []§ 7623(b) claimant." (Doc. No. 1 at 44). As discussed above, because Plaintiff's counsel confirmed that Plaintiff no longer contends that Plaintiff's Whistleblower Award is a § 7623(b) award, the Court does not consider this requested relief. (Doc. No. 57 at 26:10-14).

5.  Defendant's Motion

Defendant brings its Motion pursuant to Rule 12(b)(6) and based on what the Court categorizes below as five grounds.[21] Of these grounds, two are targeted at Plaintiff's adjudicatory challenges and three are targeted at Plaintiff's rulemaking challenges.[22]

With respect to the adjudicatory challenges in Count IV and Count VIII, Defendant argues in its Opening Brief and its Reply that Plaintiff may not challenge his Whistleblower Award because the IRS's decision to award Plaintiff's § 7623(a) award is "committed to agency discretion by law" and therefore under 5 U.S.C. § 701(a)(2) is not subject to judicial review. (Doc. No. 34-1 at 13). In the event that the Court does find that the adjudication itself is reviewable, the Defendant in its Opening Brief argues that the adjudicatory counts "must be dismissed because they fail to state a plausible claim for relief" because "[b]y its plain terms, [Treas. Reg. § 301.7623-4] does not apply to [Plaintiff's Whistleblower Award]." (Doc. No. 34-1 at 17).

As for the rulemaking challenges to the Cap and the Policy Change in Count I, Count II, Count III, Count V, Count VI, and Count VII, Defendant argues variously that these Counts must be dismissed because: (1) Plaintiff "cannot maintain a facial rulemaking challenge that is inextricably intertwined with a prohibited adjudicatory challenge [i.e., the challenge to the adjudication in Count IV and Count VIII]"; (2) "[a]n APA challenge may only be brought against a final agency action," which (according to Plaintiff) the IRM $10 Million Fixed Maximum Dollar

---

[21] As will be discussed in more detail below, although most of Defendant's Motion may be categorized as properly brought under Rule 12(b)(6), the Motion is properly categorized as brought instead under Rule 12(b)(1) to the extent that it is based on an alleged lack of standing.

[22] Defendant's Opening Brief initially raised a limitations defense to Plaintiff's rulemaking challenges (Doc. No. 34-1 at 23). However, following the decision in *Corner Post, Inc. v. Bd. Of Governors of Fed. Reserve Sys.*, 144 S. Ct. 2440 (2024), Defendant elected to "not a argue at this stage that the statute of limitations (28 U.S.C. § 2401(a)) applies." (Doc. No. 44 at 9 n. 15).

Cap "is not"; and (3) Plaintiff "lacks standing to facially challenge" the IRS guidance in question because he does not allege that he will encounter this guidance in the future. (Doc. No. 34-1 at 19-24; Doc. No. 44 at 13).

<u>LEGAL STANDARD</u>

To begin with, it is important to note under which legal standard (and indeed under which Federal Rule) the Court will be adjudicating the respective challenges brought by Defendant. Defendant brings the entirety of its Motion purportedly under Rule 12(b)(6). Although this reliance on Rule 12(b)(6) is apt for the most part, it is inapt in one sense. Specifically, with respect to Defendant's challenge to Plaintiff's standing to bring his rulemaking challenges to the Cap and to the Policy Change, Defendant's motion is better categorized as being brought under Rule 12(b)(1)—which authorizes motions to dismiss for lack of subject-matter jurisdiction—as a challenge to this Court's subject-matter jurisdiction over those challenges. *See Allstate Ins. Co. v. Global Medical Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013) (citations omitted) ("Although the parties and the district court considered the issue of standing as a failure to state a claim under Rule 12(b)(6), it is more properly considered an attack on the court's subject-matter jurisdiction under Rule 12(b)(1)."). Thus, this Court will analyze Defendant's challenge to standing "under the standard of review of a . . . 12(b)(1) motion." *Kallai v. Jatola Holmes, LLC*, No. 5:21-CV-56, 2021 WL 5961626, at *3, n.1 (N.D Ohio Dec. 16, 2021).

1. <u>Motion to Dismiss Based on Rule 12(b)(1)</u>

As suggested above, standing is (axiomatically) "an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). *See also Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("Standing goes to [a c]ourt's subject matter jurisdiction" (citations omitted) (internal quotation marks omitted)).

Like any kind of challenge to subject-matter jurisdiction, a challenge specifically to the plaintiff's standing can be in the form of either a facial attack or a factual attack. *See Kale v. Procollect, Inc.*, 547 F. Supp. 3d 793, 796 (W.D. Tenn. 2021) ("Challenges to standing can be facial or factual."); *In re Saffold*, 373 B.R. 39, 43 (Bankr. N.D. Ohio 2007) ("A challenge to standing may be either a facial attack on a pleading or a factual attack.").

"A facial attack on standing challenges the legal sufficiency of the complaint, whereas a factual challenge against standing questions whether the complaint's factual assertions reflect reality." *Shumway v. Neil Hosp., Inc.*, 570 F. Supp. 3d 585, 588 (W.D. Tenn.) (citing *Ohio Nat. Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

A review of Defendant's standing arguments, (Doc. No. 34-1 at 24-25; Doc. No. 44 at 13), reveals that Defendant brings a facial rather than a factual challenge to Plaintiff's rulemaking challenges to the IRM $10 Million Fixed Maximum Dollar Cap and the 2018 Policy Change. Notably, Defendant argues that Plaintiff "does not allege that he intends to blow the whistle in the future. He does not allege that he intends to seek a future award from the IRS . . . This means he lacks standing to seek prospective relief." (Doc. No. 34 at 24). Defendant's Opening Brief further argues that Plaintiff "has not alleged that he will suffer any injury in the future if the guidance stays in place," (*Id.* at 25), and Defendant's Reply argues that "[Plaintiff] lacks standing to facially challenge the rule" because "he does not allege that he intends to report new information to the IRS or file a new claim." (Doc. No. 44 at 13). Therefore, the Court will consider only the sufficiency of the Complaint and will (subject to the exceptions that were anticipated in a footnote above and will be made apparent, consistent with that footnote, in the text below) "accept the allegations set forth in the Complaint as true" with respect to the standing challenge. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x. 576, 579 (6th Cir. 2014).

2. Motion to Dismiss Based on Rule 12(b)(6).

The remainder of Defendant's arguments, including the argument that the IRS's decision to award Plaintiff's Whistleblower Award is unreviewable under 5 U.S.C. § 701(a)(2) are properly considered as brought under Rule 12(b)(6).[23]

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To

---

[23] As detailed at the motion-to-dismiss hearing held on September 11, 2025, the Court concludes that a challenge to reviewability under 5 U.S.C. § 701(a)(2) is properly brought under Rule 12(b)(6) and is not a challenge to subject-matter jurisdiction reviewable under Rule 12(b)(1). (Doc. No. 57 at 26:15-34:13). The Court further explains its rationale here.

  The Supreme Court has held that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Instead, it is 28 U.S.C. § 1331 that "confer[s] jurisdiction on the federal courts to review agency action." *Id.* at 105. Thus, this Court has "subject matter jurisdiction over [Plaintiff's] APA claim under the federal question statute, 28 U.S.C. § 1331," and "absent some other jurisdictional bar, dismissal for lack of subject matter jurisdiction [(i.e., the basis for a Rule 12(b)(1) motion)] [is] inappropriate." *Haines v. Fed. Motor Carrier. Safety Admin.*, 814 F.3d 417, 424 (6th Cir. 2016). *See also Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014) (holding that because "the district court had jurisdiction over [plaintiff's] APA claims pursuant to the federal question statute, 28 U.S.C. § 1331 . . . dismissal pursuant to 12(b)(1) was improper."). Indeed, in *Haines*, the Sixth Circuit noted that certain threshold questions under the APA, in *Haines* specifically whether there had been a final agency action such to permit review, was really a question of whether a party had "failed to state a claim" and not a question of subject matter jurisdiction. *Haines*, 760 F.3d at 424. *See also Tennessee v. United States Dep't of Educ.*, 615 F. Supp. 3d 807, 820 n.6 (E.D. Tenn. 2022) (citing *Haines*, 760 F.3d at 424-27) ("[Although] there are threshold questions under the APA, such questions speak to the failure to state a claim under Rule 12(b)(6) rather than a lack of subject matter jurisdiction under Rule 12(b)(1)").

  The Sixth Circuit has not ruled explicitly on whether determining if an agency action is committed by law to agency discretion—such that review is impermissible under 5 U.S.C. § 701(a)(2) — is a question to be analyzed under Rule 12(b)(6). But the case law above suggests that this issue should be analyzed under Rule 12(b)(6), as likewise do decisions of the Third, Seventh and Eighth Circuits. *See Chehazeh v. Att'y Gen. of the United States*, 666 F.3d 118, 125 n.11 (3rd Cir. 2012) (citing *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (noting that the Third Circuit agrees with the "Seventh and Eighth circuits that even if Congress has committed discretion to [an agency] by law to take or not to take certain actions, it has not deprived the District Court or us of jurisdiction to consider a plaintiff's claims that such action was erroneous pursuant to the APA. The question is whether a plaintiff can state a claim for relief from such action under the APA.")). *But see Flathead Irrigation Dist. v. Zinke*, 725 F. App'x 507, 510 (9th Cir. 2018) (finding that the Court lacked jurisdiction under 5 U.S.C. § 701(a)(2) of the APA); *Sheldon v. Vilsack*, No. 11-10487, 2012 WL 1068099, at *7 (E.D. Mich. Mar. 29, 2012) (quoting 5 U.S.C. § 701(a)(2)) ("Courts do not have subject matter jurisdiction to review agency actions that are 'committed to agency discretion by law.'", *aff'd*, 538 F. App'x 644 (6th Cir. 2013).

  Accordingly, the Court concludes that, as Defendant argues and Plaintiff does not dispute, a motion to dismiss pursuant to 5 U.S.C. § 701(a)(2) is properly analyzed under Rule 12(b)(6).

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, neither need be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

 In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

DISCUSSION

1. <u>Adjudicatory Challenges</u>

   a. *Judicially Reviewable Standard under 5 U.S.C. § 701(a)(2)*

Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to a judicial review thereof." 5 U.S.C. § 702. The reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. . .." 5 U.S.C. § 706(2). However, the APA precludes judicial review to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). At issue here is whether the determination and adjudication of Plaintiff's Whistleblower Award is committed to IRS discretion by 5 U.S.C. § 701(a)(2).[24]

---

[24] In footnotes, the parties engage in a brief discussion of whether review of the Whistleblower Award is precluded under 5 U.S.C. § 701(a)(1), which provides that judicial review is impermissible where the "statutes preclude judicial review." Defendant argues that by "providing for judicial review of § 7623(b) claims but not § 7623(a) claims," in the 2006 Amendments to 26 U.S.C. § 7623, "the Court can infer that Congress intended to preclude judicial review of the latter." (Doc. No. 34-1 at 16 n.6.). The Court rejects this argument as contrary to Sixth Circuit precedent. Defendant relies on *Fligiel v. Samson*, 440 F.3d 747 (6th Cir. 2006), where the Court found that judicial review under 28 U.S.C. § 7463 was barred by 5 U.S.C. § 701(a)(1). Yet, in *Fligiel*, unlike here, there was "clear evidence that Congress did not intend to provide judicial review of agency action," including that the statute precluded review "by a Disciplinary Appeals Board," which was "the first step to judicial review" under the broader statutory scheme. *Id.* at 753. There

Congress commits a decision to agency discretion in "'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). "The so-called 'committed to agency discretion exception' is 'very narrow,' and is only applicable where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Castro Bustillo v. McAleenan*, No. 3:19-CV-00388, 2020 WL 1274600, at *3 (M.D. Tenn. Mar. 17, 2020) (quoting *Jimenez v. Sec'y, Dep't of Homeland Sec.*, No. 618-CV-1113-ORL-40-GJK, 2019 WL 175274, at *2 (M.D. Fla. Jan. 11, 2019)). Accordingly, judicial review is "unavailable where a 'court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Jimenez*, 2019 WL 175274, at *2 (quoting *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008)). Though these circumstances are rare, they do exist, and indeed have been found to exist in contexts relevant to the instant Motion. As Defendant's Opening Brief correctly notes, addressing the language of the whistleblower statute as it existed in 1982,[25] the Sixth Circuit held that "[t]he clear language of

---

is no such clear evidence here, and the only evidence which Defendant presents concerns § 7623(a)'s silence concerning review in contrast to § 7623(b). Yet, as Plaintiff notes, the Sixth Circuit has expressly held that "a statute's silence does not indicate that Congress intended to make agency action unreviewable." *Duncan v. Muzyn*, 833 F.3d 567, 577 (6th Cir. 2016) (citing *People's Gas, Light & Coke Co. v. U.S Postal Serv.*, 658 F.2d 1182, 1190 n.4 (7th Cir. 1981)). Accordingly, the Court holds that review of the Whistleblower Award is not precluded under 5 U.S.C. § 701(a)(1).

[25] Notably, 26 U.S.C. § 7623 as it existed in 1982 provided that:

> The Secretary or his delegate, under regulations prescribed by the Secretary or his delegate, is authorized to pay such sums, not exceeding in the aggregate the sum appropriated therefor, as he may deem necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law.

*Carelli*, 668 F.2d at 904 (quoting 26 U.S.C. § 7623).

The statute as it existed in 1982 is identical to the current iteration of 26 U.S.C. § 7623(a) with respect to the discretion afforded to the Secretary.

this statute vests the Secretary of the Treasury with discretion in paying such rewards." *Carelli v. Internal Revenue Serv.*, when 668 F.2d 902, 904 (6th Cir. 1982).[26] And, as Plaintiff admits, 26 U.S.C. § 7623(a) provides the Treasury Secretary with "undeniable" discretion (Doc. No. 40 at 3). Thus, the Court concludes that 26 U.S.C. § 7623(a) vests the IRS with discretion in determining § 7623(a) whistleblower awards.

However, even where the statute vests an agency with discretion, this is not the end of the analysis. Federal courts have the authority to review an agency's actions to ensure that its own regulations have been followed. *Service v. Dulles,* 354 U.S. 363 (1957). Thus, even "if there are no statutorily-created standards that can allow for judicial review, an agency's own regulations can provide standards that supply a basis for judicial review." *Oryszak v. Sullivan*, 565 F. Supp. 2d 14, 21 (D.C. Cir. 2008). Therefore, "[i]n looking for a workable standard, the court [may consider] the statutory scheme as a whole, in addition to 'formal and informal policy statements and regulations[.]'" *Netjets Aviation, Inc. v. U.S. Dep't of Agric.*, No. 2:20-CV-4464, 2021 WL 3603323, at *8 (S.D. Ohio Aug. 13, 2021) (quoting *Kondapally v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-00920 (BAH), 2020 WL 5061735, at *4 (D.D.C. Aug. 27, 2020)). *See also Hamad v. Sec'y, Dep't of Homeland Sec.,* No. 3:20-CV-476, 2021 WL 2982765, at *2 (S.D. Ohio July 14, 2021) (quoting *Physicians for Soc. Responsibility v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020)) (noting that a judicially manageable standard can exist in "'policy statements and regulations.'"). The Court may look to an agency's regulations and

---

[26] Defendant also couches this argument in terms of sovereign immunity in its Opening Brief. (Doc. No. 34-1 at 14). The "APA provides a broad waiver of sovereign immunity." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). This waiver is "limited by [the] two exceptions" in 5 U.S.C. § 701(a) and 5 U.S.C. § 704. *Id. See also Stone v. Comm'r of Internal Revenue*, 86 F.4th 1320, 1327 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1119 (2024) ("the parties seeking to rely on the APA . . . must establish that their claim falls within the APA's terms."). Accordingly, the Court analyzes these arguments through the lens of the APA's applicability and whether the waiver is limited by 5 U.S.C. § 701(a)(2).

guidance even where the statute underwriting those regulations is itself discretionary. *See, e.g.,* *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004); *Barrios Garcia v. United States Dep't of Homeland Sec.*, 25 4th 430, 445-50 (6th Cir. 2022). Thus, "'[a]n agency can create a non-discretionary duty by binding itself through a regulation carrying the force of law.'" *Barrios Garcia*, 25 4th at 450 (quoting *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018)). When an agency creates such a non-discretionary duty, the court is not barred from reviewing plaintiff's claims under § 701(a)(2), because it now has "judicially manageable standards" by which to review the "discretionary agency action[]." *Barrios Garcia*, 25 4th at 446-47.

Defendant argues that Plaintiff's adjudicatory challenges (i.e., Count IV and Count VIII) are impermissible because the determination of a § 7623(a) award "is committed to agency discretion by law" and thus not subject to judicial review. (Doc. No. 34-1 at 13). Because Plaintiff acknowledges that the IRS's discretion under 26 U.S.C. § 7623(a) is "undeniable" (Doc. No. 40 at 3), the primary question is whether, as Plaintiff alleges, the IRS's regulations in Treas. Reg. § 301.7623-1 through -4 or the IRS guidance in IRM § 25.2.2.6.4 or IRM Exhibit 25.2.2-1 limit the IRS's discretion and provide a "meaningful standard against which to judge the agency's exercise of discretion." (Doc. No. 40 at 5).[27] As explained below, the Court concludes that these regulations and guidance do not limit the IRS's discretion or provide a "meaningful standard against which to judge the agency's exercise of discretion." (*Id.*).

---

[27] To the extent that Plaintiff argues that IRM § 25.2.2.8.2.1 provides a meaningful standard for the Court to review the adjudication of Plaintiff's Whistleblower Award (Doc. No. 40 at 7-8, 13-14), this need not be considered as the "Court does not consider any issues not raised in the complaint." *Odom v. Hiland*, No. 5:13CV-P29-R, 2013 WL 4045367, at *2 (W.D. Ky. Aug. 8, 2013). Plaintiff does not mention IRM § 25.2.2.8.2.1 anywhere in the Complaint, and this IRM provision makes its first appearance in Plaintiff's Response. (Doc. No. 40 at 7). Accordingly, the arguments concerning IRM § 25.2.2.8.2.1 need not be considered.

### i. *Treas. Reg. § 301.7623-4 Does Not Apply to Plaintiff's § 7623(a) Whistleblower Award.*

To determine whether, as Plaintiff alleges, Treas. Reg. § 301.7623-4 provides a judicially reviewable standard for this Court to apply, the Court must first determine whether the substantive provisions of Treas. Reg. § 301.7623-4, including "the application of the . . . non-exclusive factors [listed in Treas. Reg. § 301.7623-4(b)(1)(i)-(viii) to determine whether they] support increasing an award percentage," Treas. Reg. § 301.7623-4(b)(1) and "the application of the . . . non-exclusive factors [listed in Treas. Reg. § 301.7623-4(b)(2)(i)-(viii) to determine whether they] support decreasing an award percentage," Treas. Reg. § 301.7623-4(b)(2), apply to Plaintiff's Whistleblower Award.

Unsurprisingly, "[c]ourts must determine a regulation's meaning by starting with its text." *Hamilton v. Comm'r of Soc. Sec.*, 98 F.4th 800, 805 (6th Cir. 2024) (citing *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 32 F.4th 548, 557 (6th Cir. 2022)). And the Court should "interpret the applicable regulations as we would a statute." *Lake Bldg. Prods., Inc. v. Sec'y of Lab.*, 958 F.3d 501, 504 (6th Cir. 2020) (citing *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)). Thus, when "particular language" is included in "one section," of a regulation but omitted "in another section," it is generally presumed that the omission was intentional and purposeful. *Salinas v. U.S. R.R. Ret. Bd.*, 592 U.S. 188, 197 (2021) (quoting *Russello v. United States*, 464 U.S 16, 23 (2021)) (internal quotation marks omitted). *See also City of Cleveland v. Ohio,* 508 F.3d 827, 847 (6th Cir. 2007) (applying principle of *expressio unius est exclusio alterius*). This type of interpretative presumption is strongest where the "relevant . . . provisions were considered simultaneously when the language raising the implication was inserted." *Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008) (quoting *Lindh v. Murphy*, 521 U.S 320, 330 (1997)) (internal quotation marks omitted).

Additionally, "[w]e must interpret regulations, no less than other legal texts, 'in a way that renders them compatible, not contradictory.'" *Edwards v. CSX Transp. Inc.*, 821 F.3d 758, 762 (6th Cir. 2016) (quoting *Maracich v. Spears*, 570 U.S. 48, 68 (2013)). Moreover, "[i]t is a fundamental canon of construction that the words of a text must be read in their context and with a view to their place in the overall scheme." *United States v. Gillispie*, 929 F.3d 788, 790 (6th Cir. 2019) (citing *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

Beginning then with the plain text of the regulations, Treas. Reg. § 301.7623-3 provides in relevant part:

> . . . *[T]he Whistleblower Office will communicate a preliminary award recommendation under section 7623(a) and §§ 301.7623-1 through 301.7623-4* to the whistleblower by sending a preliminary award recommendation letter that states the Whistleblower Office's preliminary computation of the amount of the collected proceeds, recommended award percentage, recommended award amount *(even in cases when the application of §301.7623-4 results in a reduction of the recommended award amount to zero)*, and a list of the factors that contributed to the recommended award percentage.

Treas. Reg. § 301.7623-3(b)(1) (emphasis added).

The critical language is that which is emphasized above: the cross-references to Treas. Reg. § 301.7623-4. Treas. Reg. § 301.7623-3 elsewhere provides another cross-references Treas. Reg. § 301.7623-4: "[a]t the conclusion of the process described in paragraph (b)(1) of this section, and when there is a final determination of tax, as defined in § 301.7623-4(d)(2), the Whistleblower Office will pay an award under section 7623(a) and §§ 301.7623-1 through 301.7623-4." Treas. Reg. § 301.7623-3(b)(2).

As relevant here, Treas. Reg. § 301.7623-4(b) provides a list of positive and negative factors used to determine the award percentage. Unsurprisingly, the idea is that (i) positive factors (when implicated in the case of a particular award) support increasing the percentage for that award, and (ii) negative factors (when implicated in the case of a particular award) support

decreasing the percentage for that award. According to Plaintiff, this provision provides the Court a judicially manageable standard by which to review the adjudication of Plaintiff's Whistleblower Award.

At first blush, these cross-references from Treas. Reg. § 301.7623-3 would suggest that Treas. Reg. § 301.7623-4(b)'s list of factors should be applied to the determination of Plaintiff's Whistleblower Award, thereby potentially providing a standard by which this Court could review Plaintiff's adjudication. But the Court cannot accept this suggestion without further analysis, because the applicability of Treas. Reg. § 301.7623-4 generally—and of Treas. Reg. § 301.7623-4(b)'s list of factors—is subject to the "Effective/applicability date" subsection of Treas. Reg. § 301.7623-4, which provides, "[t]his rule is effective on August 12, 2014 [and] applies to information submitted on or after August 12, 2014, and to claims for award under section 7623(b) that are open as of August 12, 2014." Treas. Reg. § 301.7623-4(e). Under this subsection, then, Treas. Reg. § 301.7623-4(b)'s list of factors is applicable to (and, by implication, *only* to) two categories of awards. The first category is awards (both 7623(a) awards and § 7623(b) awards) involving information submitted by the whistleblower on or after August 12, 2024; this does not encompass Plaintiff's Whistleblower Award, which involved information submitted no later than 2006.[28] The second category is § 7623(b) awards *that were open* as of August 12, 2014; this does not encompass Plaintiff's Whistleblower Award, which is a § 7623(a) award and not a § 7623(b) award. Treas. Reg. § 301.7623-4(e). In short, under Treas. Reg. § 301.7623-4(e), the substantive

---

[28] As detailed further in a footnote below, although Plaintiff's Counsel could have argued that "detailing information concerning Plaintiff's Form 211 submission . . . and offering to provide the IRS with additional information regarding the tax noncompliance at issue on March 3, 2016," (Doc. No. 1 at ¶ 42(n)) brings Plaintiff's Whistleblower Award within the ambit of awards with information submitted on or after August 12, 2014, Plaintiff has not made this argument, and the Court declines to consider it *sua sponte.*

provisions of Treas. Reg. § 301.7623-4—including Treas. Reg. § 301.7623-4(b)'s list of factors—simply are inapplicable to Plaintiff's whistleblower award.

Plaintiff suggests that the Court should ignore Treas. Reg. § 301.7623-4(e)'s provisions in favor of what Plaintiff describes as a "reading of the regulations [that] would apply the cross-referenced Treas. Reg. § 301.7623-4(b) to Plaintiff while excluding the portions of Treas. Reg. § 301.7623-4 that are not cross-referenced by Treas. Reg. § 301.7623-3(b)." (Doc. No. 40 at 13). The Court rejects that suggestion because it flies in the face of the statutory canon of *expressio unius est exclusio alterius*, which the Court concludes is applicable here. The canon of *expressio unius est exclusio alterius* "has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *City of Cleveland*, 508 F.3d at 847 (quoting *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168 (2003)) (internal quotation marks omitted). In other words, (i) the canon applies when items expressed in a statute are members of an associated group or series; and (ii) when it applies, the court is justified in inferring that items not mentioned were excluded by deliberate legislative choice, not inadvertence.

The canon is applicable here, and thus so is the inference that it contemplates. The other three Treasury Department regulations at issue here each have their own "Effective/applicability" date section. These "Effective/applicability date" sections each provide that the subsection is applicable to "*sections 7623(a) and 7623(b)* that are *open* as of August 12, 2014." Treas. Reg. §§ 301.7623-1(f), 301.7623-2(f), 301.7623-3(f) (emphasis added). In contrast, and as noted, Treas. Reg. § 301.7623-4's "Effective/applicability date" section provides that it is effective and applicable to § 7623(a) awards only if based on "information submitted on or after August 12, 2014," and provides that it is effective and applicable to § 7623(b) awards that are open as of

August 12, 2024 or have information submitted on or after August 12, 2014. Treas. Reg. § 301.7623-4(e).

Thus, the Court must agree with Defendant that "the Department of the Treasury knew how to draft regulations that applied to section 7623(a) claims still open in 2014. It opted not to do so [in Treas. Reg. § 301.7623-4]." (Doc. No. 34-1 at 18) (citing 79 Fed. Reg. 47264 (Aug. 12, 2014) ("[Section] 301.7623-4 was proposed to apply to information submitted on or after the date the rules are adopted as final regulations, and to claims for award under section 7623(b) that are open as of that date. Section 301.7623-4 was not proposed to apply to claims for award under section 7623(a) that are open as of that date.")).

Accordingly, under this canon, the substantive provisions of Treas. Reg. § 301.7623-4 are plainly meant to apply to Treas. Reg. § 7623(a) awards based on information submitted on or after August 12, 2014 (and no other § 7623(a) awards) because of the language of its "Effective/applicability date" section. Treas. Reg. § 301.7623-4(e). Thus, by adopting Plaintiff's suggestion to apply Treas. Reg. § 301.7623-4 to Plaintiff's § 7623(a) award—filed as it was on January 23, 2006, with its last possible information provided on February 20, 2006 (Doc. No. 1 at ¶¶ 42(i), 42(l))—the Court would violate this fundamental, and here applicable, canon of statutory interpretation.[29]

---

[29] Plaintiff's counsel could have argued that "detailing information concerning Plaintiff's Form 211 submission . . . and offering to provide the IRS with additional information regarding the tax noncompliance at issue on March 3, 2016," (Doc. No. 1 at ¶ 42(n)) brings Plaintiff's Whistleblower Award within the ambit of awards with information submitted on or after August 12, 2014 such as to make Treas. Reg. § 301.7623-4 (and the corresponding list of positive factors permitting for an increased award percentage) applicable to Plaintiff's Whistleblower Award. However, Plaintiff neither made this argument nor refuted Defendant's argument that Plaintiff "does not allege that he provided the IRS any information . . . on or after August 12, 2014." (Doc. No. 34-1 at 10). And the Court declines to consider this argument *sua sponte*.

Plaintiff also argues that "[c]onstruing regulatory text in context also requires giving effect to all a regulation's provisions." (Doc. No. 40 at 9). The Court agrees, and notes that such construction is necessary "so that no part [of the regulation] will be inoperative or superfluous, void or insignificant." *General Medicine, P.C. v. Azar*, 963 F.3d 516, 521 (6th Cir. 2020) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) (internal quotation marks omitted).

However, the Court does not agree that this rule of construction aids Plaintiff here. Plaintiff argues that Defendant's reading of the regulation "effectively excises, without rationale and in their entirety, those important aspects and cross-references of Treas. Reg. § 301.7623-3(b) from the regulation and nullifies the inclusion by Treas. Reg. § 301.7623(a)-3(f) [sic] of then-pending claims like Plaintiff's in the administrative process offered by Treas. Reg. § 301.7623-3(b)." (Doc. No. 40 at 12). This argument is unpersuasive.

As Defendant explains, consistent with the Court's observations above:

> There are some § 7623(a) claims to which [Treas. Reg. § 301.7623-4] applies, all of which are based on information submitted on or after August 12, 2014. *See* 26 U.S.C. § 7623(a); Treas. Reg. § 301.7623-4(e). So, [Plaintiff] can be correct that [Treas. Reg. § 301.7623-3] incorporates [Treas. Reg. § 301.7623-4] to some extent, but it is only for § 7623(a) claims to which [Treas. Reg. § 301.7623-4] applies (which does not include [Plaintiff's]).

(Doc. No. 44 at 8).

Construing the regulation as Defendant suggests (and as the Court now does) does not render any portion of the regulation as "inoperative or superfluous, void or insignificant." *General Medicine*, 963 F.3d at 521 (quoting *Hibbs*, 542 U.S. at 101) (internal quotation marks omitted).

In conclusion, the substantive provisions of Treas. Reg. § 301.7623-4, including those calling for (in some but not all cases) "the application of the . . . non-exclusive factors [listed in Treas. Reg. § 301.7623-4(b)(1)(i)-(viii) to determine whether they] support increasing an award percentage," Treas. Reg. § 301.7623-4(b)(1), and "the application of the . . . non-exclusive factors

[listed in Treas. Reg. § 301.7623-4(b)(2)(i)-(viii) to determine whether they] support decreasing an award percentage," do not apply to Plaintiff's Whistleblower Award. Treas. Reg. § 301.7623-4(b)(1) thus do not provide a judicially manageable standard with which to review the adjudication and determination of Plaintiff's Whistleblower Award.

### ii. *Treas. Reg. § 301.7623-1 Through -3 Do Not Provide a Judicially Manageable Standard.*

Both parties agree that Treas. Reg. § 301.7623-1 through -3 apply to Plaintiff's Whistleblower Award. (Doc. No. 40 at 9-14; Doc. No. 44 at 6). Thus, the question is whether these regulations (unlike Treas. Reg. § 301.7623-4(b)) provide meaningful standards to apply in this case when reviewing the adjudication of Plaintiff's Whistleblower Award. The Court thus will examining each of these three regulations in turn.

Treas. Reg. § 301.7623-1 merely provides information regarding "[g]eneral rules" for submitting a claim for a whistleblower award, such as rules regarding: an individual's "[e]ligibility to file [a] claim for award," how to file a "claim for award," and "[c]onfidentiality." Treas. Reg. § 301.7623-1(b), (c)(2), (e). None of these rules provide a standard under which to review a claimant's challenge to his or her award determination. Plaintiff's Complaint relies on Treas. Reg. § 301.7623-1(a), which provides in part that the "the Whistleblower Office may pay an award under section 7623(a), in a suitable amount," but this does not avail Plaintiff either. (Doc. No. 1 at ¶ 90). First, Treas Reg. § 301.7623-1, even to the extent that it discusses awarding whistleblowers a "suitable amount," does not provide "judicially manageable standards," or otherwise "'create a non-discretionary duty by binding [the IRS] through a regulation carrying the force of law'" with respect to the determination and adjudication of Plaintiff's Whistleblower Award. *Barrios Garcia*, 25 4th at 446-47, 450 (quoting *Elec. Priv. Info. Ctr.*, 910 F.3d at 144). "Suitable amount," is not a "workable standard," and gives the Court no indicia by which to assess the sufficiency of an

award. Second, this provision is couched in terms of what the Whistleblower Office "may" pay, thus clearly denoting discretion whether to pay any award at all; such a provision thus stands out as an unlikely source for a standard that cabins the agency's discretion as to what to pay if it pays. *Singh v. Rosen*, 984 F.3d 1142, 1151 (6th Cir. 2021) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)) ("As the Supreme Court has observed, '[t]he word 'may' clearly connotes discretion.'"). Thus, the Court cannot rely on Treas. Reg. § 301.7623-1 to review the adjudication of Plaintiff's Whistleblower Award.

Turning to Treas. Reg. § 301.7623-2, this subsection fares no better, being comprised mainly of definitions, which clearly do not provide a standard for this Court to review Plaintiff's Whistleblower Award determination or otherwise limit the agency's discretion with respect to the determination of Plaintiff's Whistleblower Award.

Most of the discussion in the parties' briefing is devoted to Treas. Reg. § 301.7623-3, which seemingly provides Plaintiff his best avenue for finding a judicially reviewable standard in the regulations. But on close examination of this regulation, the Court actually can find no such thing, for two reasons. First, Treas. Reg. § 301.7623-3 does not apply to the *determination* of claims filed under § 7623(a). Second, the regulation merely imposes procedural requirements for communicating with award claimants (as opposed to substantive requirements for determining the award amount).

Plaintiff claims that Treas. Reg. § 301.7623-3 "provide[s] for and require[s] an individualized, multifactor analysis for claims filed under § 7623(a)." (Doc. No. 40 at 7). This is incorrect because Treas. Reg. § 301.7623-3 actually does not apply to the analysis (i.e., *determination*) of claims filed under § 7623(a). Treas. Reg. § 301.7623-3(a) provides that the "Whistleblower Office will *pay* awards under section 7623(a) and *determine and pay* awards under

section 7623(b) pursuant to the rules of the section." Treas. Reg. § 301.7623-3(a) (emphasis added). Again, this distinction is important; under Treas. Reg. § 301.7623-3, only § 7623(b) awards are *determined*, and awards under § 7623(a) are merely *paid* (but not determined). In other words, the only awards that are determined under Treas. Reg. § 301.7623-3 are § 7623(b) awards, a category that excludes Plaintiff's Whistleblower Award. To read the regulation otherwise— including by reading it in a way that conflates § 7623(a) awards with § 7623(b) awards or determination of awards with payment of awards—would render part of the regulation "inoperative or superfluous, void or insignificant" in contravention of settled interpretative principles. *General Medicine*, 963 F.3d 516 at 521. And even if Treas. Reg. § 301.7623-3 did apply to the determination of claims filed under § 7623(a), Plaintiff's above-quoted claim still would be incorrect because as discussed below, Treas. Reg. § 301.7623-3 does not require a "multifactor analysis" for the determination of claims.

Asserting otherwise, Plaintiff suggests that § 301.7623-3(b)(1) "direct[s] the IRS to make § 7623(a) awards *based on*" multiple factors, namely "'the amount of collected proceeds, recommended award percentage, recommended award amount (even in cases when the application of 301.7623-4 results in a reduction of the recommended award amount to zero), and a list of the factors that contributed to the recommended award percentage.'" (Doc. No. 40 at 7) (emphasis added) (quoting Treas. Reg. § 301.7623-3(b)(1)). In other words, Plaintiff asserts that the listed items he has quoted from § 301.7623-3(b)(1) are factors that the IRS must analyze in determining claims. Again, Plaintiff is mistaken.

In full, Treas. Reg. § 301.7623-3(b)(1) provides:

> **(1)** *Preliminary award recommendation.* In cases in which the Whistleblower Office recommends payment of an award under section 7623(a), the Whistleblower Office will *communicate a preliminary award recommendation* under section 7623(a) and §§ 301.7623-1 through 301.7623-4 to

the whistleblower *by sending a preliminary award recommendation letter that states the Whistleblower Office's preliminary computation of the amount of collected proceeds, recommended award percentage, recommended award amount (even in cases when the application of § 301.7623-4 results in a reduction of the recommended award amount to zero), and a list of the factors that contributed to the recommended award percentage.* The whistleblower administrative proceeding described in paragraphs (b)(1) and (2) of this section begins on the date the Whistleblower Office sends the preliminary award recommendation letter. If the whistleblower believes that the Whistleblower Office erred in evaluating the information provided, the whistleblower has 30 days from the date the Whistleblower Office sends the preliminary award recommendation to submit comments to the Whistleblower Office (this period may be extended at the sole discretion of the Whistleblower Office). The Whistleblower Office will review all comments submitted timely by the whistleblower (or the whistleblower's legal representative, if any) and pay an award, pursuant to paragraph (b)(2) of this section.

Treas. Reg. § 301.7623-3(b)(1) (emphasis added).

So, what Treas. Reg. § 301.7623-3(b)(1) does is prescribe various procedural steps concerning the recommendation (and eventual payment) of a § 7623(a) award, including the manner in which the Whistleblower Office will "*communicate* a preliminary award recommendation[.]" Treas. Reg. § 301.7623-3(b)(1) (emphasis added). The communication is in the form of a letter, and the letter is to include certain things. The things to be included in the letter are the things that Plaintiff quoted from the regulation: "'the amount of collected proceeds, recommended award percentage, recommended award amount (even in cases when the application of 301.7623-4 results in a reduction of the recommended award amount to zero), and a list of the factors that contributed to the recommended award percentage.'" (Doc. No. 40 at 7). These are things to be included in an award recommendation letter and, contrary to Plaintiff's argument here, *not* factors to be analyzed in making a determination on a § 7623(a) award.

It is true that Treas. Reg. § 301.7623-3(b)(1) expressly refers to a "list of factors" in relation to payment of a § 7623(a) award, namely a "list of factors that contributed to the recommended award percentage." Treas. Reg. § 301.7623-3(b)(1). But the regulation here does not list or

prescribe factors for making a recommendation as to an award percentage; rather, it merely states that whatever those factors are, the Whistleblower Office must list them in its "preliminary award recommendation letter." Treas. Reg. § 301.7623-3(b)(1).

In short, the requirements under Treas. Reg. § 301.7623-3(b)(1) do not relate to the *determination* of the awards under § 7623(a), but instead to the procedures surrounding the requirements for communicating preliminary recommendations for awards under § 7623(a). And, relatedly, Treas. Reg. § 301.7623-3(b)(1) specifies no factors for the determination of such awards. So, this regulation does not contain a substantive standard for *determining* § 7623(a) awards, but instead a procedural standard for communicating that award to whistleblowers via an award letter. The Court's interpretation of this distinction is buttressed by the language in Treas. Reg. § 301.7623-3(a) which, as discussed above, expressly provides that the regulatory section is to be used to "pay" awards under § 7623(a), as opposed to determining them.

With respect to the other provisions of Treas. Reg. § 301.7623-3(b), Treas. Reg. § 301.7623-3(b)(2) simply describes the procedure surrounding the award "[d]ecision letter," including that the "Whistleblower Office will pay an award under section 7623(a) and §§ 301.7623-1 through 301.7623-4," and that the Whistleblower Office will further "communicate the amount of the award to the whistleblower in a decision letter." These provisions, again, provide no standard by which to judge the adjudication at issue here, either referencing other sections of the regulation which the Court has concluded either do not apply to Plaintiff or do not provide a workable standard, referencing the statute itself which provides no standard, or merely referring to sending a decision letter (the procedural validity of which is not at issue).

Treas. Reg. § 301.7623-3(b)(3) also provides no standard for the Court to use and merely focuses on the procedure concerning rejections and denials of awards under § 7623(a).

Thus, although Treas. Reg. § 301.7623-3 may provide "judicially manageable standards," or otherwise "'create a non-discretionary duty by binding [the IRS] through a regulation carrying the force of law,'" *Barrios Garcia*, 25 4th at 446-47, 450 (quoting *Elec. Priv. Info. Ctr.*, 910 F.3d at 144), with respect to the contents of the preliminary award recommendation letter and other procedures underlying the communication of the whistleblower award under § 7623(a), it creates no such standard and no such duty with respect to the determination of the award itself. Plaintiff is challenging not the *procedure* surrounding his award letter or its communication, but rather the procedure for (and the applicability of substantive rules applied in) determining his Whistleblower Award. Thus, Treas. Reg. § 301.7623-3, without more, also does not provide a workable standard to permit judicial review.[30]

Accordingly, Treas. Reg. § 301.7623-1 through -3 do not provide "the Court with . . . standards" against which to evaluate the IRS's adjudication of Plaintiff's Whistleblower Award. *Netjets*, 2021 WL 3603323, at *8, and thus the Court has no means via Treas. Reg. § 301.7623-1 through -3 "to review," the IRS's "discretionary agency action[]" in determining Plaintiff's Whistleblower Award. *Barrios Garcia*, 25 4th at 446.

### iii. *IRM § 25.2.2.6.4 and IRM Exhibit 25.2.2-1 Do Not Provide Meaningful Standards for the Court to Apply.*

To the extent that Plaintiff argues that IRM § 25.2.2.6.4 and IRM Exhibit 25.2.2-1 provide a meaningful standard for this Court to apply, this argument is predicated on the assumption that the "IRS cannot satisfy the terms of Treas. Reg. § 301.7623-3(b) [(or the other applicable regulations in Treas. Reg. § 301.7623-1 through -2)] without conducting . . . an individualized

---

[30] It is important to note here what *exactly* Plaintiff is challenging with respect to his Whistleblower Award. None of Plaintiff's counts are predicated on violations of the *procedure* in which the Whistleblower Award was communicated to Plaintiff. Rather, Plaintiff is challenging the substantive adjudication of the award amount itself and the fact that the Cap was applied at all.

analysis of factors, whether it draws those factors from Treas. Reg. § 301.7623-4(b) or from [the IRM]." (Doc. No. 40 at 14).[31] Yet, as indicated by the discussion above, this is an erroneous reading for two reasons. First, as discussed above, Treas. Reg. § 301.7623-4(b) does not apply to Plaintiff's Whistleblower Award at all. Second, neither Treas. Reg. § 301.7623-3 nor Treas. Reg. § 301.7623-1 through -2 mandate the Whistleblower Office apply factors when determining a §7623(a) award, instead providing certain procedural requirements that the IRS must follow when communicating an award letter and when it "pay[s]" an award under 26 U.S.C. § 7623(a). As detailed above, whether the IRS followed its procedure in communicating Plaintiff's Whistleblower Award is *not* at issue here, only the determination and adjudication of the award itself is.

Accordingly, any sort of reliance on the IRM is unavailing for Plaintiff in a search for a judicially manageable standard.

> ### b. Conclusion

Because the Court concludes that neither 26 U.S.C. § 7623(a), nor Treas. Reg. § 301.7623-1 through -4, nor indeed IRM § 25.2.2.6.4 or IRM Exhibit 25.2.2-1 provide meaningful standards or law to apply in this case, the IRS's decision to award Plaintiff a § 7623(a) award is "committed to agency discretion by law" and therefore not subject to judicial review. 5 U.S.C. § 701(a)(2).

Accordingly, Plaintiff's adjudicatory challenges to his Whistleblower Award contained in Count IV and Count VIII are unreviewable under 5 U.S.C. § 701(a)(2) and will be dismissed pursuant to Rule 12(b)(6).

---

[31] This argument seems to be anticipated in Plaintiff's Complaint, where Plaintiff argues that "[t]he IRM $10 Million Cap thus effectively removes and replaces the analysis anticipated by" the applicable Treasury regulations. (Doc. No. 1 at ¶ 90).

2. Rulemaking Challenges

This leaves Plaintiff's rulemaking challenges (made in Count I, Count II, Count III, Count V, Count VI, and Count VII) to the Cap and to the Policy Change pending before the Court. A brief note is therefore appropriate on the remedies that Plaintiff seeks. As discussed above, Plaintiff seeks numerous forms of relief but, as to some forms, does not make them in connection with particular counts. As further discussed above, the Court treats forms of relief targeted at the validity of the 2018 IRM Award Policy Change and the IRM $10 Million Fixed Maximum Dollar Cap as being requested under the rulemaking challenges.

In short, the Court understands that with respect to the rulemaking challenges to the Cap and to the Policy Change, Plaintiff requests that this Court "[r]emand the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3 and IRM Exhibit 25.2.2-1 to the IRS for reconsideration in compliance with the APA with consideration of treating all filers similarly with respect to the application of IRM $10 Million Fixed Maximum Dollar Cap,"[32] "[e]nter a judgement declaring that both the promulgation and application of the IRM $10 Million Fixed Maximum Dollar Cap specifically outlined in IRM Exhibit 25.2.2-1, Policy Statement 4-27 and the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3, are arbitrary, capricious, otherwise not in accordance with law, or otherwise in excess of statutory jurisdiction, authority, or limitation, or short of statutory right, within the meaning of the Administrative Procedure Act,"[33] or "[i]ssue an

---

[32] The Court understands Plaintiff here to request that the Court remand the Policy Change to the IRS and, in so doing, order the IRS to reconsider the rule for future applicants. The Court interprets this to be a request for prospective relief akin to an injunction.

[33] To the extent that there is doubt here, the Court understands this to be a request for a prospective declaration that the IRS guidance is unlawful. *See e.g., Bowles v. Whitmer*, 120 F.4th 1304, 1310-11 (6th Cir. 2024) ("While a past injury might create standing to seek damages, it generally does not create standing to seek an injunction or declaratory judgment. These forward-looking preventative remedies will do nothing to redress an already-occurred injury." (citations omitted)).

order vacating and setting aside IRM $10 Million Fixed Maximum Dollar Cap specifically outlined in IRM Exhibit 25.2.2-1, Policy Statement 4-27 and the 2018 IRM Award Policy Change described in IRM § 25.2.2.6.3, pursuant to the Administrative Procedure Act."[34] (Doc. No. 1 at 43-44). In effect, all of this is prospective relief seeking to challenge the guidance writ large as to future claimants, and not retrospective relief challenging the application of the Cap and the Policy Change to Plaintiff's adjudication, which would be relief properly sought under Counts IV and VIII.[35]

---

[34] Whether vacating an "agency rule is a prospective or retrospective remedy is an issue that is hotly debated." *Butler Amusements, Inc. v. United States Dep't of Lab.*, No. CV 24-1042, 2025 WL 2457687, at *11 (D.D.C. Aug. 26, 2025). *Compare* John Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 Yale J. on Reg. 119, 129 (2023) ("Vacatur is a prospective remedy, which eliminates the binding effect of regulations for the future.") *with* Daniel H. Conrad, *Filling the Gap: The Retroactive Effect of Vacating Agency Regulations*, 29 Pace Univ. L. Rev. 1, 1 (2011) ("When a court vacates an agency regulation, there is a serious question as to whether or not the vacation should apply retroactively."). To the extent that there is doubt here, the Court understands this to be a request for a prospective vacatur of the rule as to future claimants. To the extent that Plaintiff intended to request relief retroactively as to apply to the adjudication of Plaintiff's Whistleblower Award, the Court notes that such a request would be an impermissible challenge to the underlying adjudication which the Court has concluded is unreviewable under the APA.

[35] The Court notes that to the extent that Plaintiff intends or intended to use the rulemaking challenges to the IRS guidance to seek relief that would ultimately challenge the underlying adjudication, (e.g., relief that challenges the rules as applied to Plaintiff), this would be (in light of the Court's conclusion that the adjudication is unreviewable) an impermissible workaround of the prohibition in 5 U.S.C. § 701(a)(2) of judicial review of decisions committed by law to agency discretion.

The Court also notes that in light of Plaintiff's Response, it is now unclear exactly what forms of requested relief are still pending before the Court. In his Response, Plaintiff seems to cabin his request for relief, and clarifies that "[t]o be clear, Plaintiff is asking that this Court permanently enjoin the application of the IRM $10 Million Fixed Maximum Dollar Cap and the 2018 IRM Award Policy Change as they relate to Plaintiff's Final Award Determination and remand this matter back to the IRS to make a redetermination of Plaintiff's Whistleblower Award in a manner that takes this injunction into consideration and complies with governing Treasury regulations. This relief would, of course, require prospective work to be done by the IRS. Alternatively, Plaintiff has asked this Court to issue an order simply finding that Plaintiff is entitled to the 15 percent award that the IRS approved before mechanically applying the IRM $10 Million Fixed Maximum Dollar Cap and the 2018 IRM Award Policy Change, as set forth in its Final Award Determination." (Doc. No. 40 at 25). Yet, the form of relief Plaintiff refers to here seems better sought only under Plaintiff's barred adjudicatory counts (Counts IV and VIII), which is how the Court construes the Complaint as discussed above.

In any event, for the sake of addressing Plaintiff's Complaint in a light most favorable to it, and for the sake of addressing each count and each claim for relief put forward by Plaintiff, the Court will address the prayers for relief as written in the Complaint.

As detailed below, this renders Plaintiff's rulemaking counts fatally deficient due to lack of Article III standing.

     *a. Standing Generally*

"Standing 'ensure[s] that federal courts do not exceed their authority' and 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Tenn. Gen. Assemb. v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[A]s the party invoking federal jurisdiction," a plaintiff has the burden of establishing standing by alleging facts demonstrating that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). "Standing is to be determined as of the time the complaint is filed." *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (citation omitted) (internal quotation marks omitted). A plaintiff "*must* satisfy" this "three-part test for each injury that they allege, for each defendant that they sue, and for each remedy that they seek." *Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024) (emphasis added) (citing *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023); *Davis v. Colerain Township*, 51 F.4th 164, 171 (6th Cir. 2022)). Importantly, a plaintiff "cannot rely on general or conclusory allegations in support of its standing but instead must assert a plausible claim for why it has standing." *Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021).

"[W]hen a plaintiff seeks prospective relief such as an injunction," as does Plaintiff here, "the plaintiff must establish a sufficient likelihood of future injury." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024). *See also Tessanne v. Children's Hosp. Med. Ctr. of Akron*, No. 23-3480, 2024 WL 1435306 at *2 (6th Cir. Apr. 3, 2024)

("To seek such prospective relief, a plaintiff must be facing an imminent risk of future harm."). "A plaintiff's standing to seek [prospective] relief depends on the likelihood of future harm." *Hange v. City of Mansfield, Ohio*, 257 F. App'x 887, 891 (6th Cir. 2007) (citing *L.A. v. Lyons*, 461 U.S. 95 at 105 (1983)) (discussing standing in the context of declaratory and injunctive relief). That is to say, a plaintiff must allege facts showing that he faces a threat of injury that is "real and immediate, not conjectural or hypothetical." *Lyons*, 461 at 101-02 (internal quotation marks omitted). Where the "threat of repeated injury is speculative or tenuous, there is no standing to seek" prospective relief. *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 833 (6th Cir. 2001) (discussing prospective relief in the form of an injunction and declaration). Thus, "[a]bsent a sufficient likelihood that [plaintiff] will again be wronged in a similar way," a plaintiff is not entitled to prospective relief. *Lyons*, 461 U.S. at 111.

Importantly, although previous injury might be "evidence bearing on whether there is a real and immediate threat of repeated injury," "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding [prospective] relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Thus, past injury alone "is not an adequate injury in fact to confer standing for [prospective] relief." *Grendell*, 252 F.3d at 832. And plaintiffs lack standing to seek prospective "relief for events that occurred wholly in the past." *Tessanne*, 2024 WL 1435306, at *2.

It is important to note that federal courts must decide jurisdictional issues before considering merits issues. *See In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016); *Amacher v. Tennessee*, No. 3:21-CV-00638, 2022 WL 141607, at *2 (M.D. Tenn. Jan. 14, 2022) (same). A challenge to a plaintiff's standing under Article III of the Constitution is a challenge to subject-matter jurisdiction; Article III "[s]tanding is a jurisdictional requirement," and "[i]f no

plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tenn. Gen. Assemb.*, 931 F.3d at 507. Accordingly, the Court first addresses whether Plaintiff has standing to pursue his rulemaking challenges to the Cap and to the Policy Change (and the accompanying prospective relief).

Because the Court ultimately concludes that Plaintiff lacks standing as to his rulemaking claims and their accompanying relief, the Court does not reach the other arguments raised by the parties' briefing.

>   b. *Plaintiff Lacks Standing to Bring Rulemaking Challenges to the IRM $10 Million Fixed Maximum Dollar Cap and 2018 Award Policy Change.*[36]

Plaintiff lacks standing to bring rulemaking challenges to the IRM $10 Million Fixed Maximum Dollar Cap and 2018 Award Policy Change because he has not alleged anywhere in his Complaint that these policies will be applied to him again. The relief which Plaintiff seeks with respect to his rulemaking challenges to the Cap and to the Policy Change is plainly the sort of prospective relief that "depends on the likelihood of future harm" to Plaintiff. *Hange*, 257 F. App'x at 891. Plaintiff has provided *nowhere* in his Complaint that he is at risk of future harm from these policies or pled that there is "sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. True, Plaintiff pled a past injury, i.e., the past application of the Cap and the Policy Change to his adjudication.[37] Yet, this past injury alone is not enough to "confer standing" to seek prospective relief. *Grendell*, 252 F.3d at 832. Beyond this past injury, Plaintiff

---

[36] Defendant also argues that Plaintiff lacks standing to bring Counts V, VI, and VII for an additional reason, namely that in those particular counts, Plaintiff challenges merely the retention of the $10 Million Fixed Maximum Dollar Cap. (Doc. No. 44 at 11 n.13). This argument has initial appeal, but the Court declines to address it because the Court concludes herein that Plaintiff entirely lacks standing to bring the rulemaking claims challenging the Cap and the Policy Change.

[37] Indeed, Defendant does not contest Plaintiff's "standing for his as-applied, adjudicatory challenges." (Doc. No. 44 at 13).

has not alleged that he is "facing imminent" reapplication of the Cap. *Tessanne*, 2024 WL 1435306, at \*2. Nor indeed has Plaintiff even pled a "speculative or tenuous" threat of "future injury." *Grendell*, 252 F.3d at 833. To make out any sort of threat of future injury, the Court would need to concoct out of whole cloth new allegations in the Complaint to allege that Plaintiff intends to submit another IRS whistleblower award and that such a whistleblower award would somehow be subject to the Cap and Policy Change. Even if the Court could concoct such allegations (which actually it cannot), those allegations would do Plaintiff no good because they would present "a chain of events . . . simply too attenuated to establish injury in fact, and to confer the required standing." *Id.*

The application of the Cap to Plaintiff's Whistleblower Award was completed no later than when Plaintiff was sent his Second Final Award Determination on September 27, 2023. (Doc. No. 1 at ¶ 42(t)). Indeed, the application of the Cap to Plaintiff, and the injury derived from that application, occurred "before the court's intervention was sought," and are events "that occurred wholly in the past." *Tessanne*, 2024 WL 1435306 at \*2. Thus, if the Court were to grant Plaintiff's requested prospective relief, it would be granting such relief "for events that occurred wholly in the past," which the Sixth Circuit has held as impermissible. *Id.*

Accordingly, Plaintiff lacks standing to bring his rulemaking challenges and seek the prospective relief requested thereto. Because Plaintiff lacks standing to bring his rulemaking challenges in Count I, Count II, Count III, Count V, Count VI, and Count VII, these counts will be dismissed pursuant to Rule 12(b)(1), and the other arguments in the parties' briefing on these counts will not be addressed.

<u>CONCLUSION</u>

For the various reasons discussed above, each of Plaintiff's claims is subject to dismissal.

Therefore, the Motion (Doc. No. 34) will be **GRANTED** in its entirety.

An appropriate accompanying order will be entered.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE